### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANDY K. BRENNER, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 09-01574 |
| CONSOLIDATED RAIL CORP. and | : | |
| CSX TRANSPORTATION, INC., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF LAW

**Joyner, J.**                                              **April 18, 2011**

Presently before the Court is the Motion for Summary

Judgment of Defendants Consolidated Rail Corporation and CSX

Transportation, Inc. (ECF No. 22). For the following reasons,

the Motion shall be granted in part and denied in part.

## I.   BACKGROUND[1]

Randy K. Brenner ("Plaintiff") has filed suit against his

employers, Consolidated Rail Corporation ("Conrail") and CSX

Transportation, Inc. ("CSXT"), (collectively, "Defendants") under

the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51-

60. Plaintiff was employed as a trackman and machine operator by

---

[1] Defendants filed a "Statement of Undisputed Facts" (ECF No. 22-18) to accompany their motion for summary judgment. Plaintiff did not file an opposing statement of undisputed facts nor did he lay out Plaintiff's version of the facts in his opposition brief. Plaintiff only noted in his Response to Defendant's Motion for Summary Judgment that "[i]t is admitted only that the Statement of Facts was filed in this matter. Many of Defendant's statements are, in fact, disputed by Plaintiff." (ECF No. 27.) This is simply not good enough. Plaintiff has not provided this Court with any counter-narrative to compare with the facts laid out by Defendants. Therefore, we will adopt Defendants' Statement of Undisputed Facts except to the extent that Defendants' purported "facts" are in fact conclusions of law or where Plaintiff has effectively disputed a proposed "undisputed fact" through argument in his response.

Defendant Conrail from April 1976 until June 1999, and by Defendant CSXT from June 1999 though the present.

On April 13, 2009, Plaintiff filed a complaint alleging that in the course of his employment on the railroad he "was exposed to excessive and harmful cumulative trauma to his knees due to the repetitive climbing, bending, stooping and walking on uneven or unleveled ballast." (Compl. ¶ 9, ECF No. 1.) Plaintiff further alleges that he suffers from "occupational knee injuries as a result of repetitive occupational trauma to his knees, which required left knee surgery." (Id. ¶ 10.) Plaintiff claims that his injuries were caused by Defendants' negligence in, among other things, failing to provide a safe place to work, failing to provide a timely and adequate ergonomics program, and failing to modify certain job duties in order to minimize the cumulative trauma. (Id. ¶ 12.)

Defendants filed the instant motion for summary judgment (ECF No. 22) to which Plaintiff responded in opposition (ECF No. 27). Thereafter, Defendants filed a reply brief (ECF No. 29). The motion is now ripe for our disposition.

## II.  LEGAL STANDARD

### A.  Summary Judgment

When a party files for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).[2] In making a summary judgment determination, all

inferences must be viewed in the light most favorable to the non-

moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 587 (1986). However, "[t]he party opposing summary

judgment may not rest upon the mere allegations or denials of the

. . . pleading; its response, by affidavits or as otherwise

provided in this rule, must set forth specific facts showing that

there is a genuine issue for trial." Saldana v. Kmart Corp., 260

F.3d 228, 232 (3d Cir. 2001) (internal quotation marks omitted).

When the non-moving party is the plaintiff, he must "make a

showing sufficient to establish the existence of [every] element

essential to [his] case." Celotex Corp. v. Catrett, 477 U.S.

317, 322 (1986).

## B.    FELA

The FELA "was passed in 1908 in an effort to provide a tort

compensation system for railroad workers who, at that time,

experienced among the highest accident rates in United States

history." Hines v. Consol. Rail Corp., 926 F.2d 262, 267 (3d

Cir. 1991). The FELA provides that a railroad operating in

---

[2] Effective December 1, 2010, Rule 56 was significantly revised. Among other changes, the summary judgment standard formerly found in subsection (c)(2) can now be found in subsection (a). As there has been no substantive change to this standard, we will cite to the amended rule despite the parties' briefing having been mostly completed before the effective date of the 2010 amendments.

interstate commerce shall be liable to any employee who is injured during his employment if

> such injury or death result[ed] in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

51 U.S.C. § 51. In furtherance of its humanitarian policy, courts have found that the FELA "has a more lenient standard for determining negligence and causation." Hines, 926 F.2d at 267. Indeed, "a FELA plaintiff need only present a minimum amount of evidence in order to defeat a summary judgment motion." Id. at 268 (citing Pehowic v. Erie Lackawanna R.R., 430 F.2d 697, 699-700 (3d Cir. 1970)). Despite the remedial nature of the act, however, the FELA is not a workers' compensation statute. Consol. Rail Corp. v. Gottshall, 512 U.S. 532, 543 (1994). The FELA "'does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur.'" Id. (quoting Ellis v. Union Pac. R. Co., 329 U.S. 649, 653 (1947)).

Accordingly, to prevail on a claim under the FELA, a plaintiff must prove four elements: (1) the defendant is a common carrier by railroad engaged in interstate commerce; (2) the plaintiff was employed by the defendant and assigned to perform duties that furthered such commerce; (3) the injuries were sustained while the plaintiff was employed by the common carrier;

and (4) the plaintiff's injuries resulted from the defendant's negligence.  Felton v. Southeastern Pa. Transp. Auth., 952 F.2d 59, 62 (3d Cir. 1991).

## III. ANALYSIS

Defendants argue that they are entitled to summary judgment on three grounds: (1) Plaintiff cannot succeed on the merits of his claims because he has no admissible expert evidence of causation; (2) Plaintiff's claims are time-barred; and (3) Plaintiff's claim that his knee injuries were caused by walking on uneven ballast is precluded by federal law.  We will discuss each argument in turn.

### A.   Expert Evidence of Causation

#### 1.   *Richard M. Miller, D.O.*

Defendants argue that Plaintiff's treating physician, Dr. Richard M. Miller, cannot testify as an expert witness in this case because his expert report does not conform to the requirements of Federal Rule of Civil Procedure 26(a)(2)(B). Defendants argue in turn that without Dr. Miller's expert testimony Plaintiff cannot establish the causation element of his FELA claims.  Plaintiff responds that Dr. Miller's expert narrative satisfies Rule 26(a)(2)(B)'s requirements and that, even if Dr. Miller's testimony were disqualified, Plaintiff can establish causation with evidence from an expert in the field of ergonomics.

Federal Rule of Evidence 702 governs the standards for admitting testimony by experts and provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge skill experience, training, or education, may testify thereto in the form of an opinion or otherwise."  Rule 702 further instructs that an expert witness may testify if (1) his testimony is based upon sufficient facts or data; (2) his testimony is the product of reliable principles and methods; and (3) he has applied the principles and methods reliability to the facts of the case.

Procedurally, parties must disclose the identity of any expert witness expected to be used at trial and must provide a written report prepared and signed by the expert.  Fed. R. Civ. P. 26(a)(2)(A), (B).[3]  The report of an expert "retained or specially employed to provide expert testimony in the case" must contain, among other information, "a complete statement of all opinions the witness will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B)(I).[4]

---

[3] Again, we cite to the amended rule because there is no substantive change as it relates to the issues before the Court.

[4] Defendants contend that although Dr. Miller is Plaintiff's treating surgeon, he was specifically retained by Plaintiff to provide expert causation testimony and must therefore comply with Rule 26(a)(2)(B).  Plaintiff does not contest this proposition and merely argues that Dr. Miller has, in fact, complied with the rule.  Typically, treating physicians can testify without submitting expert reports when testifying about a patient's treatment and diagnosis. See Mracek v. Bryn Mawr Hosp., 610 F. Supp. 2d 401, 406 (E.D. Pa. 2009) ("It is agreed that treating physicians are not required to submit

Plaintiff's causation expert, Dr. Miller, is Plaintiff's treating physician and surgeon. In response to Plaintiff's counsel's request for a narrative report, Dr. Miller produced a two and a half page letter report. The first two pages detail Dr. Miller's treatment of Plaintiff's bilateral knee pain, including a recitation of the various diagnoses, medications, and procedures related to Plaintiff's condition. On the third page, Dr. Miller provides his causation opinion:

> Within a reasonable degree of medial certainty it is felt that the patient's symptoms and degenerative changes are due in at least part to the work he does on the railroad. The patient describes climbing up and down ladders, squatting and standing on his feet for most of the day.

(Dr. Miller Report 3, Sept. 23, 2008, ECF No. 22, Ex. I.) Dr. Miller notes that "the patient continues to have knee pain and may have difficulty with some aspects of his work because of that." (Id.)

We will not exclude Dr. Miller's testimony on the basis of

---

expert reports when testifying based on their examination, diagnosis and treatment of a patient."). However, if a treating physician is specifically retained to provide opinion testimony on issues such as causation, that physician must comply with the expert report requirements of Rule 26(a)(2)(B). See Brooks v. Union Pac. R.R. Co., 620 F.3d 896, 900 (8th Cir. 2010) (excluding the causation opinion of a treating physician for failure to comply with Rule 26(a)(2)). Here, the record supports Defendant's characterization of Dr. Miller as a retained expert with regard to his proposed testimony on causation. (See, e.g., Letter from A. Short to Dr. Miller dated Aug. 15, 2008, ECF No. 15, Ex. J; Dr. Miller Dep. 8:21-9:6, Oct. 6, 2010, ECF No. 15, Ex. K.) As noted above, Plaintiff appears to concede this fact as well. Therefore, we find that Dr. Miller is not excepted from the Rule 26(a)(2)(B) expert report requirement.

Rule 26(a)(2)(B). Dr. Miller is a treating physician and orthopedic surgeon whose expert qualifications are not being challenged. For the time being, we find that Defendants' objections go to the weight, not the admissibility, of Dr. Miller's opinion testimony.

In their reply brief, Defendants also argue that Dr. Miller's testimony should be deemed unreliable under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). As the record now stands, we cannot make such a determination. However, we will entertain an appropriate motion after hearing the relevant testimony and will also consider an appropriate curative instruction to the jury.

*2. Ellen Rader Smith*

In response to Plaintiff's contention that his ergonomic expert can provide the necessary causation evidence, Defendants argue that Plaintiff's proposed expert, Ellen Rader Smith, is not qualified to give a medical causation opinion. We agree.

In FELA cases, courts have generally found that expert medical testimony is necessary to establish causation of cumulative trauma and repetitive stress injuries. See Myers v. Ill. Cent. R.R. Co., 629 F.3d 639, 643 (7th Cir. 2010) ("For most cumulative trauma injuries, courts follow the general principle that a layman could not discern the specific cause and thus they have required expert testimony about causation."); Brooks v.

Union Pac. R.R. Co., 620 F.3d 896, 899 (8th Cir. 2010) (finding that because the plaintiff's traumatic lower back injury "had no obvious origin, expert testimony is necessary to establish even that small quantum of causation required by FELA" (internal quotation marks omitted)); McCann v. Ill. Cent. R.R., 711 F. Supp. 2d 861, 872 (C.D. Ill. 2010) (requiring expert testimony to prove causation of carpal tunnel syndrome and degenerative disk injury); see also Wills v. Amerada Hess Corp., 379 F.3d 32, 46 (2d Cir. 2004) ("[W]here an injury has multiple potential etiologies, expert testimony is necessary to establish causation, even in view of plaintiff's reduced burden to prove causation."). Smith is not a physician and is therefore unqualified to provide such an opinion. See Smelser v. Norfolk S. Ry. Co., 105 F.3d 299, 305 (6th Cir. 1997) (finding that biomechanics experts "are qualified to determine what injury causation forces are in general and can tell how a hypothetical person's body will respond to those forces, but are not qualified to render medical opinions regarding the precise cause of a specific injury"). As with Dr. Miller's expert testimony, we will consider Daubert issues concerning Smith's testimony at trial.

## B.    Statute of Limitations

Defendants argue that summary judgment should be granted in their favor because Plaintiff filed his complaint more than three years after his cause of action accrued and his claim is

therefore barred by FELA's statute of limitations.  Plaintiff

responds that "[t]here is no medical record or evidence of any

kind which would indicate that the knee pain was chronic or

significant until Plaintiff began treating with Dr. Miller in

October of 2006, well within the statute of limitations."  (ECF

No. 27 at unnumbered 9.)

Under the FELA's statute of limitations, an action must be

"commenced within three years from the day the cause of action

accrued."  45 U.S.C. § 56.  "When an employee is injured in a

traumatic incident, determination of the beginning of the

limitations period generally presents little difficulty."

Kichline v. Consol. Rail Corp., 800 F.2d 356, 358 (3d Cir. 1986).

By contrast, "[w]hen the injury . . . is an occupational disease

that has an indefinite beginning and progresses insidiously over

many years, the statute of limitations, particularly the

statutory accrual factor, becomes more difficult to measure."

Id.  In such cases, the Third Circuit Court of Appeals has held

that "the statute of limitations begins to run when the employee

becomes aware of his disease and its cause."  Id.; see also Urie

v. Thompson, 337 U.S. 163, 170 (1949) (finding in the case of a

plaintiff exposed to silica dust that "the afflicted employee can

be held to be injured only when the accumulated effects of the

deleterious substance manifest themselves" (internal quotation

marks and citations omitted)).  Plaintiffs have "an affirmative

duty to exercise reasonable diligence and investigate the cause of a known injury." Matson v. Burlington N. Santa Fe R.R., 240 F.3d 1233, 1235 (10th Cir. 2001); see also Tolston v. Nat'l R.R. Passenger Corp., 102 F.3d 863, 866 (7th Cir. 1996) ("At some point, persons with degenerative conditions have a duty to investigate cause." (citing Aparicio v. Norfolk & W. Ry. Co., 84 F.3d 803, 814-15 (6th Cir. 1996))).

Here, the evidence of record establishes that a genuine dispute exists as to the time that Plaintiff discovered his injuries and their causes. Plaintiff filed his complaint on April 13, 2009. Therefore, to avoid the FELA time bar, Plaintiff's claim must have accrued after April 13, 2006. Defendant points to medical records and Plaintiff's deposition testimony to show that prior to April 2006 – specifically, in June 1990 and March 2001 – Plaintiff complained to his treating physician, Daniel Berger, M.D., of right knee pain. (Pl.'s Dep. 87:2-89:2, Apr. 22, 2010, ECF No. 22, Ex. C; Dr. Berger's Medical Rs., ECF No. 22, Ex. L; Dr. Berger Dep. 16:17-20:24, Oct. 5, 2010, ECF No. 22, Ex. M.) Plaintiff argues, however, that this evidence is not enough to show an absence of dispute regarding the timing of the accrual of Plaintiff's knee injuries. Plaintiff also points generally to "Plaintiff's medical records and testimony [that] indicate that he began suffering from the right knee pain one and a half to two months prior to the initial

11

October 2006 visit; which is still well within the statute of limitations in this matter." (ECF No. 27 at unnumbered 9.) Indeed, Dr. Miller's medical records indicate that when he treated Plaintiff on October 17, 2006, Plaintiff had been experiencing right knee pain for one and a half months. (Dr. Miller's Medical Rs., ECF No. 22, Ex. H; see also Dr. Miller Dep 13:25–14:3, Oct. 6, 2010, ECF No. 22, Ex. K.) This evidence is consistent with Plaintiff's deposition testimony that his right knee began to pain him in August 2006. (Pl's Dep. 9:9–9:11, ECF No. 22, Ex. C.) At the time, Plaintiff's left knee did not hurt as much as the right knee. (Pl.'s Dep. 9:2–10:19, ECF No. 22, Ex. C.)

Drawing all reasonable inferences in favor of Plaintiff, we find that there is a genuine dispute on the issue of when Plaintiff's injury manifested. The record, when read in the light most favorable to Plaintiff, suggests that Plaintiff's 1990 and 2001 complaints were isolated incidents occurring years apart and years before the injuries that are the subject of this case. Other than Dr. Berger's testimony that he "suspect[s] that there is a relationship to ongoing pathology" with regard to Plaintiff's knee problems over the years, there is no evidence that these prior injuries were anything but isolated and intermittent episodes. (Dr. Berger Dep. 25:20–26:5, ECF No. 22, Ex. M.) It will be a question for the jury whether Plaintiff was

12

or should have been aware of his knee condition prior to April 13, 2006, and whether Plaintiff exercised reasonable investigative diligence.

Additionally, there is the question of whether and when Plaintiff knew or should have known that his pain was work related.  There is no indication in Plaintiff's medical records that Plaintiff's 1990 or 2001 knee complaints were ever associated with his railroad work.  Defendants point to a carpal tunnel screening and signed release from 1999 to show that "Plaintiff was arguably aware, no later than April of 1999, of the possibility of seeking legal recourse against the Railroads for injuries believed to be sustained through his work."  (ECF No. 27 at 26.)  We cannot find that no genuine dispute exists on this issue based on this evidence.

Accordingly, we will deny Defendants' motion for summary judgment on the statute of limitations grounds.

## C. Ballast

Finally, Defendants argue that to the extent that Plaintiff alleges that his knee injuries were caused by uneven ballast stone, his claim is precluded by the Federal Railway Safety Act ("FRSA"), 49 U.S.C. § 20101 et seq., and should be dismissed with prejudice.[5]  Plaintiff responds that his ballast-related claims

---

[5]

Track ballast is the stone or other material placed underneath and around railroad tracks to provide the structural support, drainage,

are not precluded.

The purpose of the FRSA "is to promote safety in every area
of railroad operations and reduce railroad-related accidents and
incidents."  21 U.S.C. § 20101.  Under the FRSA, the Secretary of
Transportation has authority to "prescribe regulations and issue
orders for every area of railroad safety."  49 U.S.C. § 20103(a).
In addition, the FRSA contains an express preemption provision,
under which "a plaintiff can bring an action under state law
unless the Secretary has prescribed a regulation or issued an
order 'covering the subject matter of the State requirement.'"
Nickels v. Grand Trunk W. R.R., 560 F.3d 426, 430 (6th Cir. 2009)
(quoting 49 U.S.C. § 20106(a)(2)).[6]  "A state law action is

_____

and erosion protection necessary for safe rail travel.  The two main
sizes of track ballast are mainline ballast, which can be up to 2
inches in diameter, and yard ballast, which is typically 1 inch in
diameter or smaller.

Nickels v. Grand Trunk W. R.R., 560 F.3d 426, 428 (6th Cir. 2009).

[6] A 2007 amendment to the FRSA preemption clause clarified:

Nothing in this section shall be construed to preempt an action
under State law seeking damages for personal injury, death, or
property damage alleging that a party –

    (A) has failed to comply with the Federal standard of care
established by a regulation or order issued by the Secretary of
Transportation (with respect to railroad safety matters), or the
Secretary of Homeland Security (with respect to railroad security
matters), covering the subject matter as provided in subsection
(a) of this section;

    (B) has failed to comply with its own plan, rule or standard
that it created pursuant to a regulation or order issued by either
of the Secretaries; or

    (C) has failed to comply with a State law, regulation, or
order that is not incompatible with subsection (a)(2).

49 U.S.C. § 20106(b)(1).  In turn, subsection (a)(2) provides in full:

'covered' and therefore preempted if a FRSA regulation 'substantially subsume[s]' the subject matter of the suit." Nickels, 560 F.3d at 429 (quoting CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664 (1993)).  A FELA claim is precluded by the FRSA if it would be preempted if brought by a non-employee under state law.  Nickels, 560 F.3d at 430; Lane v. R.A. Sims, Jr., Inc., 241 F.3d 439, 443-44 (5th Cir. 2001); Waymire v. Norfolk & W. Ry. Co., 218 F.3d 773, 775-76 (7th Cir. 2000).

Here, Plaintiff seeks to bring a negligence claim premised in part upon alleged negligent exposure to "excessive and harmful cumulative trauma to his knees due to . . . walking on uneven or unleveled ballast."  (Compl. ¶ 9, ECF No. 1.)  The Secretary of Transportation has prescribed the following regulation on ballast:

> Ballast; general.  Unless it is otherwise structurally
> supported, all track shall be supported by material which
> will —

---

A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement.  A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order —

    (A) is necessary to eliminate or reduce an essentially local safety or security hazard;

    (B) is not incompatible with a law, regulation, or order of the United States Government; and

    (C) does not unreasonably burden interstate commerce.

49 U.S.C. § 20106(a)(2).

(a) Transmit and distribute the load of the track and railroad rolling equipment to the subgrade;

(b) Restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad rolling equipment and thermal stress exerted by the rails;

(c) Provide adequate drainage for the track; and

(d) Maintain proper track crosslevel, surface, and alinement.

49 C.F.R. § 213.103. We must determine whether this regulation substantially subsumes the subject matter of Plaintiff's claim.

As yet there is no binding authority in the Third Circuit on this issue. However, a district court judge in the Eastern District of Pennsylvania has held that claims relating to the nature and size of ballast are precluded by the FRSA. See McCain v. CSX Transp., Inc., 708 F. Supp. 2d 494, 504 (E.D. Pa. 2010) (finding that "Plaintiff's claims based on the nature and size of the track ballast are precluded"). Elsewhere, district and state courts are split. Compare Norris v. Cent. of Ga. R.R. Co., 635 S.E.2d 179, 183 (Ga. Ct. App. 2006) ("To the extent that Norris's FELA claim rests upon different ways by which COG might have supported the mainline track to comply with 49 C.F.R. § 213.103, the negligence claim is precluded. The fact that the regulation does not specify any size for the various purposes of the ballast does not alter the fact that the regulation nonetheless 'covers' or 'substantially subsumes' the subject matter of a ballast selection relative to track maintenance."), with Wilcox v. CSX

16

Transp., Inc., No. 05-107, 2007 U.S. Dist. LEXIS 39684, at *21-22
(N.D. Ind. May 30, 2007) (declining to find that ballast claims
are precluded because "the plain language of § 213.103 does not
state, expressly or by implication, that the regulation was
intended to provide for the safety of railroad employees, or that
it was promulgated by the [Federal Railroad Administration] with
a clear intent to occupy the field of safety regulation of
ballast completely").

We are persuaded, nonetheless, by the reasoning of the Sixth
Circuit Court of Appeals' 2009 decision, Nickels v. Grand Trunk
Western Railroad, 560 F.3d 426 (2009). In Nickels, the
plaintiffs brought claims under the FELA arguing that their
railroad employers had "failed to provide a safe working
environment by using large mainline ballast – instead of smaller
yard ballast – underneath and adjacent to tracks receiving heavy
foot traffic" and that they suffered permanent injuries as a
result. Id. at 428. The Sixth Circuit held, first, that "a FELA
claim is precluded if the same claim would be preempted by the
FRSA if brought as a state-law negligence action." Id. at 429-
30. Turning to the question of whether the plaintiffs' claim
would be preempted, the Sixth Circuit began by examining the
regulation governing ballast. Id. at 430-31 (citing 49 C.F.R.
§ 213.103). The court observed that "[r]ather than prescribing
ballast sizes for certain types or classes of track, the

17

regulation leaves the matter to the railroads' discretion so long as the ballast performs the enumerated support functions.  In this way, the regulation substantially subsumes the issue of ballast size."  Id. at 431.  Therefore, the court held that 49 C.F.R. § 213.103 covered the issue of ballast size and precluded the plaintiffs' FELA claims.  Id. at 433.  However, the court noted that the plaintiffs had not brought claims alleging negligence "in the railroads' use of oversized ballast in areas completely separate from those where track stability and support were concerned."  Id. at 432; id. at 433 ("Even to the extent that the plaintiffs argue oversized ballast was used 'along,' 'adjacent to,' or 'parallel to' the track, they do not contend that the ballast in those areas was not being used for stability under § 213.103.").

Here, Plaintiff alleges that the cumulative trauma to his knees was caused by "walking on uneven or unleveled ballast." (Compl. ¶ 9, ECF No. 1.)  Plaintiff clarifies in his response to Defendants' motion for summary judgment that "Plaintiff's claims are unrelated to the ballast size in connection with supporting and providing drainage for the track itself."  (ECF No. 27 at unnumbered 14.)  We have little information about the nature of Plaintiff's claims concerning ballast.  However, a perusal of the expert report of Plaintiff's ergonomic expert reveals the following:

> Because of uneven ground surfaces, the Trackman cannot
> obtain symmetrical weight bearing in the yards as he
> walks along the track and stands all day to perform track
> tasks.  This relates to varied size ballast, including
> the larger ballast on the main line where Mr. Brenner
> mostly works, as well as intermediate and smaller ballast
> at sidings and yards . . . .

(Smith Report 10, ECF No. 29, Ex. A.)  This analysis suggests that Plaintiff's claims in fact relate almost entirely to track ballast.

We hold that to the extent that Plaintiff's claims are predicated upon allegations of negligence regarding the nature and size of ballast used for track stability, support, and drainage — including mainline, secondary, and yard track — such claims are precluded by 49 C.F.R. § 213.103.  We will grant summary judgment for Defendants on such claims.  We will allow Plaintiff to pursue his ballast-related claims only to the extent that Plaintiff's claims relate to ballast being used in areas completely separate from those where track support, stability, and drainage are concerned.

## IV.  CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is granted in part and denied in part.  An appropriate order will follow.

19